UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LEVON ANDREASIAN,

        Petitioner,

    v.

KRISTI NOEM, *et al.*,

        Respondents.

Case No. 5:26-cv-00995-CV (DTB)

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**[DOC. # 2]**

1

On March 3, 2026, Petitioner Levon Andreasian ("Petitioner") filed an Application for Temporary Restraining Order and Preliminary Injunction ("Application"). Doc. # 2 ("App."). On March 6, 2026, Respondents[1] filed an Opposition, and on March 9, 2026, Petitioner filed a Reply. Doc. # 1 ("Opp."); Doc. # 11 ("Reply").

Having reviewed and considered all the briefing filed with respect to the Application, the Court finds that oral argument is not necessary to resolve the Application, Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

## I.    **INTRODUCTION**

On March 3, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 against Respondents. Doc. # 1 ("Pet.").[2]

On the dame day, Petitioner filed the Application for Temporary Restraining Order ("TRO") ordering Respondents to (1) immediately release Petitioner from custody; (2) refrain from removing Petitioner or taking him from the Central District of California;  and (3) show cause why Petitioner's application for a preliminary injunction should not be granted. App. at 1–3; Doc. # 2-2 at 2.

---

[1] Respondents are Kristi Noem, Secretary of Homeland Security; Pamela J. Bondi, Attorney General of the United States of America; Thomas Giles, Los Angeles Field Office Director, Bureau of Immigration and Customs Enforcement; James Pilkington, Assistant Field Office Director, Adelanto Detention Facility; Warden Geo Group, Inc., Adelanto Detention Facility (collectively, "Respondents").

[2] The Petition satisfies Local Rule 83-16.2, which governs verification of a petition by a person other than the person in custody. C.D. Cal. L. Civ. R. 83-16.2. Because the Petition is verified by Petitioner's counsel rather than by Petitioner himself, the verification must explain why Petitioner did not verify the document. It does. Petitioner's counsel, Deputy Federal Public Defender Dale F. Ogden, declares that Petitioner is currently detained in a county different from where Mr. Ogden maintains his office and residence. Pet. at 12. Mr. Ogden also states that he reviewed the Petition's factual allegations with Petitioner and that Petitioner confirmed those allegations are true and correct. *Id*. The verification therefore reflects that counsel's statements are based on facts personally known to him or conveyed to him by Petitioner, whose confirmation provides the source for any facts stated on information and belief. *See Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *4 (C.D. Cal. Dec. 11, 2025). Accordingly, the Court rejects Respondents argument that the Application should be denied for failure to comply with the Local Rules. *See* Opp. at 6–7. As detailed below, however, Petitioner's Application fails for lack of evidence for other reasons.

## II.    FACTUAL BACKGROUND

Petitioner was born in Azerbaijan on March 5, 1995. Pet. at 3. He entered the United States in 1999 at age four with his mother, fleeing the conflict between Azerbaijan and Armenia. *Id*. He applied for asylum in 2000, was granted relief, and became a lawful permanent resident in July 2006. *Id*.; Doc. # 10-2 at 4.

With their opposition, Respondents submit documents—unaccompanied by any declaration—showing that between 2017 and 2025, Petitioner sustained several drug-related and property convictions in California. *See* Opp. at 2–5; Doc. # 10-2 at 4–6. Those records indicate that most recently, following a February 7, 2025 conviction for possession of a controlled substance, Petitioner received a two-year sentence. Doc. # 10-2 at 2.

ICE detained Petitioner on August 14, 2025, upon completion of his state sentence. Pet. at 3. He is currently seeking to vacate those convictions. *Id*. On October 7, 2025, an immigration judge ordered him removed to Azerbaijan, or alternatively to Armenia or Russia. *Id*.; Doc. # 10-1.

Since entering ICE custody, Petitioner has been unable to secure travel documents. *Id*. The Petition, however, offers only limited detail about his communications with Azerbaijani, Armenian, and Russian officials. Petitioner contacted the Azerbaijani consulate on October 22 and November 7, 2025, and was told he would not receive travel documents because he is not a citizen. *Id*. He sent a written follow-up request on December 2, 2025, but received no response. *Id*. The Petition does not describe the substance of these communications.

Petitioner attaches a half-page, sworn declaration from his Ventura County public defender, Michael Albers, dated December 26, 2025. Doc. # 1-1. Like the Petition, the declaration provides sparse detail. Mr. Albers states that, at Petitioner's request, he contacted the Azerbaijani Consulate General seeking written confirmation that the consulate would *not* issue travel documents or accept Petitioner as a deportee. *Id*. ¶ 4. According to Mr. Albers, the "person [he] spoke to"—whose name, title, and the date of

3

the conversation are not provided—explained that the consulate does not issue such letters and remarked that "she did not understand why [Petitioner] calls her so often since he's not an Azerbaijani citizen." *Id*.

Petitioner also sought travel documents from Armenia and Russia. Pet. at 4. On September 30, 2025, his mother "attended an appointment at the Armenian Consulate in Glendale to obtain travel documents, but was unsuccessful." *Id*. The Petition includes no declaration from Petitioner's mother and provides no further detail about this "unsuccessful" appointment. On December 15, 2025, Petitioner sent written inquiries to the Armenian and Russian consulates but received no response. *Id*. He also attempted to call the Russian Federation but could not reach a representative; he does not state when he called, what number he dialed, whom he attempted to reach, or whether he left a message. *Id*.

Mr. Albers' declaration further states that he contacted the Armenian consulate seeking written confirmation that Armenia would not accept Petitioner as a deportee. Doc. # 1-1 ¶ 5. The consular employee (again, the declaration does not provide the person's name, title, or when the conversation occurred) told Mr. Albers the consulate does not issue such letters but provided an email address for written requests. *Id*. Mr. Albers sent an email but had not received a response as of December 26, 2025. *Id*. The declaration does not indicate when the email was sent. *Id*.

As of the filing of the Petition, Petitioner had been in ICE custody for six months and seventeen days, and the post-removal period had lasted four months and twenty-four days.

## III.   **LEGAL STANDARD**

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary

injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV.   <u>DISCUSSION</u>

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation modified), particularly when a case raises constitutional claims. *See Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Here, Petitioner has not met his burden to show a likelihood of success on either of his two constitutional claim.

**A.    Petitioner Has Not Rebutted the Presumption that His Post-Removal Detention Is Reasonable**

Petitioner first argues that his post-removal detention violates due process because, under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), there is no significant likelihood of removal in the reasonably foreseeable future. Pet. at 6–8.

As a threshold matter, the Court rejects Respondents' contention that Petitioner fails to state a claim because his detention is roughly 30 days short of the 180 days they deem "necessary to state a viable *Zadvydas* claim." Opp. at 8. *Zadvydas* does not bar a noncitizen from challenging detention before the end of the six-month period. Its core holding is that § 1231(a)(6) does not authorize detention beyond the initial 90-day removal period when removal is not reasonably foreseeable. *See* 533 U.S. at 699–700. The six-month benchmark is a "presumptively reasonable period of detention" adopted "for the sake of uniform administration," not a rigid prerequisite. *Id.* at 700–01. District courts in the Ninth Circuit generally treat this as a guide, not a bar. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020); *Tumasov v. Doe 1*, No. 26CV590-LL-DEB, 2026 WL 458146, at *2 (S.D. Cal. Feb. 18, 2026); *see also Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring) ("[T]he 6-month presumption…is just that—a presumption."). The Court therefore rejects Respondents' argument that Petitioner cannot bring a *Zadvydas* claim simply because his detention has not yet reached six months.

But to obtain a TRO, Petitioner must show a likelihood of success on the merits—not merely that he has stated a claim. On this record, he has not done so.

Courts have granted *Zadvydas* relief before six months when the petitioner provides clear evidence showing that removal is not reasonably foreseeable. *See, e.g., Ndandu v. Noem*, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *4–6 (S.D. Cal. Jan. 5, 2026) (Mexico declined removal; no alternative country identified; government offered only made "minimal" efforts regarding possible third country removal); *Tumasov v. Doe 1*, No. 26CV590-LL-DEB, 2026 WL 458146, at *3–4 (S.D. Cal. Feb. 18, 2026) (Armenia unavailable due to withholding of removal; Respondents admitted they were not attempting to remove the petitioner to Armenia; no third country willing to accept petitioner). If the government provides evidence specific to the petitioner's removal in response, courts deny relief. *See, e.g., Yousefi v. Larose*, No. 3:26-cv-00272-RBM-VET (S.D. Cal. Feb. 13, 2026), slip op. at 4–6 [Doc. # 6] (finding that even if Petitioner had rebutted the presumption of reasonableness, the government's evidentiary showing that Petitioner had

a valid Iranian passport and had arranged for the petitioner's flight to Iran, and had represented to the court that the petitioner's removal would occur promptly once the court's stay was lifted); *see also*, *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017) (denying habeas relief where China maintained "continued communications" with U.S. officials regarding the petitioner and indicated it was still reviewing the petitioner's repatriation).

Here, Petitioner offers only limited evidence that Azerbaijan will not issue travel documents because he is not a citizen. *See* Section II. His showing regarding Armenia and Russia is even thinner. *Id*. The Petition provides too little detail about the inquiries made by Petitioner, his mother, or his counsel to determine whether those governments have declined to issue travel documents or are still considering the requests.[3] On this sparse record—and given that a TRO is an "extraordinary remedy" requiring a "clear showing" of entitlement—Petitioner has not provided evidence sufficient to overcome the presumption that his post-removal detention remains reasonable under *Zadvydas*. *See* *Winter*, 555 U.S. at 22.

**B.    Petitioner's Third Country Removal Claim Is Speculative**

Petitioner's second claim asserts that, "to the extent" he is removed to a country other than Azerbaijan, Armenia, or Russia without notice and an opportunity to be heard, such removal would violate the Due Process Clause. Pet. at 8–9. But this claim is entirely speculative. Petitioner concedes that he "has not been formally ordered removed to any country other than Azerbaijan, Armenia, and Russia." *Id*. at 9. And it is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th

---

[3] Petitioner cites several cases in which courts found a lack of reasonably foreseeable removal "in nearly identical situations." Reply at 6. But crucially, in each of those cases, the courts found the post-removal period exceeded six months. Here, by contrast, Petitioner bears the burden of producing evidence sufficient to rebut the *Zadvydas* presumption that his current period of post-removal detention is reasonable.

Cir. 1988).

Courts also proceed with caution when reviewing matters committed to the Executive Branch, particularly in the immigration context. *See Jazi v. Rubio*, No. 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025). *See also Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) (emphasizing the Judiciary's obligation not to "step outside our constitutionally assigned role to improperly restrict reasonable Executive branch enforcement of the immigration laws" (emphasis in original)). On this record, Petitioner has not shown a likelihood of success on his second claim concerning removal to any country other than Azerbaijan, Armenia, or Russia.

**V.    CONCLUSION**

Because Petitioner has not shown a likelihood of success on either of his claims, the Court declines to address the remaining *Winter* factors. Accordingly, the Application is **DENIED**.

**IT IS SO ORDERED**.

Dated: 3/16/26

*Cynthia Valenzuela*

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE