UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVON ANDREASIAN,<br><br>                    Petitioner,<br><br>        v.<br><br>KRISTI NOEM, *et al.*,<br><br>                    Respondents. | Case No. 5:26-cv-00995-CV (DTB)<br><br>**ORDER GRANTING PETITIONER'S RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>**[DOC. # 14]** |

1

On March 16, 2026, the Court denied Petitioner's application for a temporary restraining order because he had not shown a likelihood of success on either of his two claims. Doc. # 12. As to Petitioner's due process claim under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), because Petitioner had been detained for less than six months, the Court found that a rebuttable presumption of reasonableness applied to his post-removal-period of detention and that Petitioner had not rebutted this presumption. *Id*. at 5–7. As to Petitioner's second claim—that he might be removed, without notice or an opportunity to be heard, to a country to which he had not been ordered removed—the Court found the claim speculative. *Id*. at 7–8.

On April 8, 2026, Petitioner filed a Renewed Application for Temporary Restraining Order and Preliminary Injunction ("Renewed Application"). Doc. # 14 ("App."). On April 9, 2026, Respondents[1] filed an Opposition, and on April 15, 2026, Petitioner filed a Reply. Doc. # 16 ("Opp."); Doc. # 19 ("Reply").

Having reviewed and considered all the briefing filed with respect to the Application, the Court finds that oral argument is not necessary to resolve the Application, Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

## I.     INTRODUCTION

On March 3, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 against Respondents. Doc. # 1 ("Pet.").[2]

---

[1] Respondents are Kristi Noem, Secretary of Homeland Security; Pamela J. Bondi, Attorney General of the United States of America; Thomas Giles, Los Angeles Field Office Director, Bureau of Immigration and Customs Enforcement; James Pilkington, Assistant Field Office Director, Adelanto Detention Facility; Warden Geo Group, Inc., Adelanto Detention Facility (collectively, "Respondents").

[2] The Petition satisfies Local Rule 83-16.2, which governs verification of a petition by a person other than the person in custody. C.D. Cal. L. Civ. R. 83-16.2. Because the Petition is verified by Petitioner's counsel rather than by Petitioner himself, the verification must explain why Petitioner did not verify the document. It does. Petitioner's counsel, Deputy Federal Public Defender Dale F. Ogden, declares that Petitioner is currently detained in a county different from where Mr. Ogden maintains his office and residence. Pet. at 12. Mr. Ogden also states that he reviewed the Petition's factual allegations with Petitioner and that

Petitioner's April 8, 2026 Renewed Application for Temporary Restraining Order ("TRO") ordering Respondents to (1) immediately release Petitioner from custody; (2) refrain from removing Petitioner or taking him from the Central District of California; and (3) show cause why Petitioner's application for a preliminary injunction should not be granted. App. at 6–7; Doc. # 14-3 at 2.

## II.   FACTUAL BACKGROUND[3]

Petitioner was born in Azerbaijan on March 5, 1995. Pet. at 3. He entered the United States in 1999 at age four with his mother, fleeing the conflict between Azerbaijan and Armenia. *Id*. He applied for asylum in 2000, was granted relief, and became a lawful permanent resident in July 2006. *Id*.; Doc. # 10-2 at 4.

Between 2017 and 2025, Petitioner sustained several drug-related and property convictions in California. *See* Opp. at 3–5; Doc. # 10-2 at 4–6. Records provided by Respondents indicate that most recently, Petitioner received a two-year sentence following a February 7, 2025 conviction for possession of a controlled substance. Doc. # 10-2 at 2. ICE detained Petitioner on August 14, 2025, upon completion of this sentence. Pet. at 3. He is currently seeking to vacate those convictions. *Id*.

On October 7, 2025, an immigration judge ordered Petitioner removed to Azerbaijan, or alternatively to Armenia or Russia. *Id*.; Doc. # 10-1.

Since entering ICE custody, Petitioner, his mother, and his counsel, have attempted to contact representatives of Azerbaijan, Armenia, and Russia to secure travel documents needed for Petitioner's removal without success. Pet. at 3–4, 7; Doc. # 1-1.

---

Petitioner confirmed those allegations are true and correct. *Id*. The verification therefore reflects that counsel's statements are based on facts personally known to him or conveyed to him by Petitioner, whose confirmation provides the source for any facts stated on information and belief. *See Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *4 (C.D. Cal. Dec. 11, 2025).

[3] The factual record is set out in greater detail in the Court's March 16, 2025 Order. *See* Doc. # 12. The Court briefly summarizes that record here and notes the additional information, relevant here, that has been provided since then.

Most recently, on April 3, 2026, Ms. Victoria Funk, a certified law student working under the direct supervision of Petitioner's counsel, contacted the Azerbaijan Consulate to inquire about the status of Petitioner's travel documents. Doc. # 14-1 ¶ 2. A consular employee told her that Petitioner would not be issued travel documents, despite having been born in Azerbaijan, because his first name indicated that he is Armenian. *Id*. On the same day, Ms. Funk also attempted to contact the Armenian Consulate and representatives of the Russian Federation regarding Petitioner's travel documents, but had not received a response as of the date of filing the Renewed Application. *Id*. ¶¶ 3–4.

Respondents have not provided any information about their efforts to secure travel documents for Petitioner, nor have they given an indication of when Defendant's removal can be expected. *See generally* Opp.

As of the filing of the Renewed Application, Petitioner had been in ICE custody for seven months and twenty-five days, and the post-removal period had lasted six months.

## III.    LEGAL STANDARD

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also

known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV.    **DISCUSSION**

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation modified), particularly when a case raises constitutional claims. *See Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Here, Petitioner argues that his continued detention violates his Due Process Rights against indefinite detention, pursuant to *Zadvydas*. App. at 2–5. The Court agrees.

8 U.S.C Section 1231 ("Section 1231") limits "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Section 1231 provides that when a noncitizen is ordered removed from the United States, the Attorney General must effectuate removal within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* at § 1231(a)(2)(A). If the removal period expires before the noncitizen has been removed, section 1231(a)(6) authorizes the Attorney General to continue the "post-removal-period detention . . . to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688; *see* 8 U.S.C. § 1231(a)(6).

Pursuant to *Zadvydas*, a six-month period of detention after an order of removal was "presumptively reasonable," but that after the six-month period:

once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

There is no dispute that Petitioner has now been in post-removal confinement for longer than six months. *See* Opp. at "Petitioner's total post-removal order detention exceeds six months[.]"). The next question, then, is whether Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Petitioner argues that his removal is not reasonably foreseeable because, despite his efforts to obtain travel documents from the three countries to which he has been ordered removed, he has been denied relief and has been unable to determine whether any plan is underway to coordinate his removal to Azerbaijan, Armenia, or Russia. App. at 2–5. What little information he has received indicates that those countries will not accept him. And despite the time that has passed since Respondent's first Application, Respondents have provided no more information than before to suggest that they are any closer to repatriating Petitioner to Azerbaijan, Armenia, or Russia. *See* Opp.; Doc. # 10.

The Court agrees that these facts provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) ("[T]he passage of time combined with the government being no closer to repatriating a detainee than they were once they first took

him into custody" is sufficient to show a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future) (citation modified).

Under *Zadvydas*, the burden therefore shifts to Respondents to come forward with evidence sufficient to rebut Petitioner's showing. Here, they have provided none. Instead, Respondents argue only that deportations to Azerbaijan and Armenia are possible in general. *See* Opp. at 7–8. But they offer no indication that either country will accept Petitioner, and no indication that they have a plan to remove him in the reasonably foreseeable future. *Id.*

The Court therefore finds that Petitioner has shown a likelihood of success on the merits of his *Zadvydas* claim.

### A. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of a TRO because he is being detained, which constitutes a loss of liberty that is irreparable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

### B. Balance of the Equities and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits of his claims regarding his detention violating INA regulations (not providing

him proper notice or an informal interview), and his detention being wrongful in light of *Zadvydas*, and in light of the irreparable harms inherent in the deprivation of constitutional rights and in ICE detention, this factor weighs in favor of Petitioner.

### C. Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

### V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Renewed Application and ORDERS as follows:

1.   Respondents are ordered to immediately release Petitioner from custody and are enjoined from re-detaining Petitioner without compliance with 8 U.S.C. § 241.4(l) and 8 U.S.C. § 241.13(i).

2.   To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

3.   This temporary restraining order shall take immediate effect and expires at **5:00 p.m. PT on May 7, 2026**. The temporary restraining order may be extended for good cause or upon Respondents' consent.

4.   Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than **May 1, 2026**. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than **May 5, 2026**.

8

5.    The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED**.

Dated:   4/24/26

*Cynthia Valenzuela*

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE

9